### IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### EASTERN DISTRICT OF TENNESSEE

In re

                           Case No.  04-34850

ROBERT ROY BEAN
a/k/a ROBERT ROY BEAN, JR.
JESSICA ELLEN BEAN

            Debtors


### MEMORANDUM ON
### APPLICATION OF JOHN O. THREADGILL
### FOR ALLOWANCE OF COMPENSATION


**APPEARANCES:**    VAUGHAN AND ZUKER
      Larry C. Vaughan, Esq.
      112 Durwood Drive
      Knoxville, Tennessee  37922
    JENKINS & JENKINS, ATTYS., PLLC
      Michael H. Fitzpatrick, Esq.
      2121 First Tennessee Plaza
      Knoxville, Tennessee  37929
      Attorneys for Debtors

    THREADGILL LAW FIRM, P.C.
      John O. Threadgill, Esq.
      9724 Kingston Pike
      Suite 701
      Knoxville, Tennessee  37922
      Attorneys for John O. Threadgill


**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

Before the court is the Application of John O. Threadgill and the Threadgill Law Firm, PC, Attorney for the Debtors, for Allowance of Compensation and Reimbursement of Expenses[1] (Application for Compensation) filed by John O. Threadgill (Mr. Threadgill) on August 4, 2006, and the Debtors' Response Opposing the Application of John O. Threadgill and His Firm for Compensation (Objection to Application for Compensation) filed by the Debtors on August 23, 2006.

The trial of this contested matter was held on December 18, 2006. The record before the court consists of nine exhibits introduced into evidence, along with the testimony of Mr. Threadgill, the Debtor, Jessica Bean,[2] Michael H. Fitzpatrick, Esquire, the Debtors' bankruptcy attorney, and Mary D. Miller, Esquire, an attorney for Community Bank of Loudon County, a Greene County Bank Office (Community Bank). The court also takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of relevant undisputed facts of record in the Debtors' bankruptcy case file.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) (West 2006).

I

The Debtors filed the Voluntary Petition commencing their case under Chapter 11 of the Bankruptcy Code on September 14, 2004.[3] On October 13, 2004, the Debtors filed an Application

---

[1] Notwithstanding the title, Mr. Threadgill does not request reimbursement of any expenses.

[2] The joint Debtor, Robert Roy Bean, did not testify. All references in this Memorandum to the Debtor, in the singular, are, therefore, to Jessica Ellen Bean.

[3] They continue to operate as debtors-in-possession under 11 U.S.C.A. § 1107 (West 2004).

to Employ Counsel (Application to Employ), requesting approval to employ Mr. Threadgill, pursuant

to "11 U.S.C. § 327(c)," to represent them in their prosecution of a pre-petition claim against

American Fidelity Bank and/or Greene County Bank.[4]  *See* TRIAL EX. 1.  As set forth in the

Application to Employ, the terms of employment were as follows:

> The Debtors propose to employ [Mr. Threadgill] upon a contingency basis plus fee
> of $10,000.00, and such expenses as may be allowed by the Court in accordance with
> the standard promulgated by the U.S. Trustee's Office, with the total amount of the
> compensation and expenses to be fixed and determined by the Court upon proper
> interim or final application at the conclusion of the attorney's services.

TRIAL EX. 1, at ¶ 4.  Following a hearing on November 4, 2004, the court entered an Order approving

the Application to Employ on November 30, 2004, *nunc pro tunc* to October 13, 2004 (Order

Authorizing Employment).[5]  *See* TRIAL EX. 3.

On October 12, 2004, Mr. Threadgill prepared and submitted to the Debtors an engagement

letter (Engagement Letter) stating that the scope of his representation was "to pursue by Federal

Court litigation collection of damages for breach of contract and other lender liability issues against

the defendants and related entities."  TRIAL EX. 2, at 1.  With respect to fees, the Engagement Letter

provides that Mr. Threadgill will be paid "a contingent fee of one third of any recovery plus expenses

and an initial earned fee of $10,000.00[,]" as well as "all costs and expenses advanced . . . including

filing fees, court costs, photocopies, facsimile charges, long distance, travel and other out-of-pocket

---

[4] The reference in the Application to Employ to 11 U.S.C. § 327(c) is incorrect.  The correct reference should
have been to 11 U.S.C. § 327(e) which authorizes employment of an attorney, upon approval of the court, "for a specified
special purpose."  Section 327(c) defines the circumstances under which a representative or employee of a creditor may
be employed in a case under Chapter 7, 11, or 12.

[5] An Objection to the Application to Employ was filed on October 19, 2004, by Community Bank of Loudon
County; however, the Objection was withdrawn on November 3, 2004.

3

expenses." TRIAL EX. 2, at 2. The Debtors agreed to and accepted the terms set forth in the Engagement Letter on October 13, 2004. *See* TRIAL EX. 2, at 3.

On October 14, 2004, the Debtors and Magic Spray Car Wash, Inc., filed a Complaint commencing Civil Action No. 3:04-CV-472 in the United States District Court for the Eastern District of Tennessee against Greene County Bank, American Fidelity Bank, Community Bank of Loudon County, Tim Carroll, and Patricia Turner (District Court Lawsuit). *See* TRIAL EX. 9. The Complaint was amended on March 31, 2006, and during the course of this litigation, the Debtors, by and through Mr. Threadgill, filed a motion for an injunction to stop a foreclosure that was subsequently denied, a motion for partial summary judgment grounded on fraud that was subsequently denied, and three separate motions for default judgment against the Defendant Tim Carroll that were all denied. *See* TRIAL EX. 9. Each of these documents was opposed by some or all of the defendants to the District Court Lawsuit, who also filed a motion to dismiss and/or for summary judgment on March 27, 2006. *See* TRIAL EX. 9.

After discussions between the attorneys in the District Court Lawsuit, along with the Debtors' bankruptcy counsel, it was agreed that the matter would go to mediation, and Mr. Threadgill proposed that Attorney William Vines conduct the mediation, which was agreed to by opposing counsel. Both Mr. Threadgill and Mr. Fitzpatrick attended the mediation held on June 28, 2006. Following the mediation, the parties entered into a Settlement Agreement Full and Mutual Release (Settlement Agreement) resolving the District Court Lawsuit, wherein Community Bank agreed to pay $125,000.00 to the Debtors and their bankruptcy estate, and the Debtors agreed that Community Bank would hold a secured claim in their bankruptcy case in the fixed amount of $50,000.00,

4

without any additional interest, fees, or costs. TRIAL EX. 5.  Community Bank filed a Motion to

Approve Compromise and Settlement With Greene County Bank d/b/a Community Bank of Loudon

County, a Greene County Bank Office, Greeneville, TN in the bankruptcy court on July 18, 2006,

which was granted by an Order Granting Motion to Approve Compromise and Settlement With

Greene County Bank d/b/a Community Bank of Loudon County, a Greene County Bank Office,

Greeneville, TN entered on August 9, 2006.

Mr. Threadgill filed the Application for Compensation on August 4, 2006, asking the court

to allow, pursuant to 11 U.S.C.A. §§ 328 and 331 (West 2004), compensation of $51,625.00,

representing the initial $10,000.00 retainer paid by the Debtors along with $41,625.00 for the

one-third contingency fee set forth in the Engagement Letter. *See* TRIAL EX. 6.  In support of the

Application for Compensation, Mr. Threadgill states that the requested application is for services

rendered on behalf of the Debtors and attaches an invoice evidencing that between October 11, 2004,

and June 28, 2006, he expended a total of 200.25 hours working on the Debtors' case, which he

billed out at his "normal hourly rate" of $275.00. *See* TRIAL EX. 7.

The Debtors filed their Objection to Application for Compensation on August 23, 2006,

arguing that the compensation sought by Mr. Threadgill was not reasonable under 11 U.S.C.A.

§ 330(a) (West 2004).  First, the Debtors disagreed that the net settlement with Community Bank

was $150,000.00 as figured by Mr. Threadgill, but instead was $75,000.00, since the settlement

payment of $125,000.00 should, in their opinion, be offset by allowance of a $50,000.00 secured

claim. Second, the Debtors contend that even though they entered into a contingency fee agreement

with Mr. Threadgill, the amount was unreasonable based upon his inefficient prosecution of the

5

District Court Lawsuit on their behalf.  On October 25, 2006, the court, upon agreement of the

Debtors and United States Trustee, entered an Order allowing Mr. Threadgill compensation of the

$10,000.00, with the balance of his compensation to be determined at trial.

## II

Professionals seeking compensation bear the burden of proof that they are entitled to the

requested compensation.  *In re New Boston Coke Corp.*, 299 B.R. 432, 438 (Bankr. E.D. Mich.

2003).  Compensation of professionals is governed by 11 U.S.C.A. § 330(a), which provides, in

material part:

> (a)(1) After notice to the parties in interest and the United States Trustee and a
> hearing, and subject to section[] . . . 328 . . ., the court may award to . . . a
> professional person employed under section 327 . . .—
>
> > (A) reasonable compensation for actual, necessary services rendered by the
> > . . . attorney and by any paraprofessional person employed by any such
> > person; and
>
> > (B) reimbursement for actual, necessary expenses.

11 U.S.C.A. § 330(a).[6]

An exception to the general rule of § 330(a) is found in § 328, which provides:

---

[6] In connection with § 330, Federal Rule of Bankruptcy Procedure 2016 requires the following:

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses,
from the estate shall file an application setting forth a detailed statement of (1) the services rendered,
time expended and expenses incurred, and (2) the amounts requested.  An application for
compensation shall include a statement as to what payments have theretofore been made or promised
to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with
the case, [and] the source of the compensation so paid or promised[.]

FED. R. BANKR. P. 2016(a).

> The trustee . . . may employ or authorize the employment of a professional person under section 327 . . . of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis.  Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C.A. § 328(a).  "To summarize, 'section 328 applies when the bankruptcy court approves a particular rate or means of payment, and § 330 applies when the court does not do so.'"  *Nischwitz v. Miskovic (In re Airspect Air, Inc.)*, 385 F.3d 915, 920 (6th Cir. 2004) (quoting *In re Tex. Sec., Inc.*, 218 F.3d 443, 445 (5th Cir. 2000)).

> [W]hether a court 'pre-approves' a fee arrangement under § 328 should be judged by the totality of the circumstances, looking at both the application and the bankruptcy court's order.  Factors in the determination may include whether the debtor's motion for appointment specifically requested fee pre-approval, whether the court's order assessed the reasonableness of the fee, and whether either the order or the motion expressly invoked § 328.

*Airspect Air, Inc.*, 385 F.3d at 922.

Mr. Threadgill argues that he was employed under § 328 because the Engagement Letter executed by the Debtor evidences their agreement for payment and expressly provides for an up-front payment of $10,000.00 plus a one-third contingency fee of any amounts collected and expenses incurred.  Nevertheless, for the purposes of compensating Mr. Threadgill for his representation of the Debtors in their bankruptcy case, the Application to Employ and the Order Authorizing Employment control, not the Engagement Letter, and neither the Application to Employ nor the Order Authorizing Employment specify Mr. Threadgill's employment under § 328.

7

The Application to Employ states that the Debtors "propose to employ [Mr. Threadgill] upon a contingency basis plus fee of $10,000.00, and . . . expenses . . ., with the total amount of the compensation and expenses to be fixed and determined by the Court upon proper interim or final application at the conclusion of the attorney's services."  TRIAL EX. 1, at ¶ 4.  No reference is made to § 328, nor does the Application to Employ set forth the specific terms of any proposed contingency fee, other than state that the Debtors proposed to pay one.  Furthermore, the Application to Employ does not reference the Engagement Letter nor is a copy attached thereto.  *See* TRIAL EX. 1.

Similarly, the Order Authorizing Employment provides that the Debtors are authorized to employ Mr. Threadgill "under the terms and conditions set forth in [his] application . . . [and] total compensation to be paid to [Mr. Threadgill] shall be determined by the Court upon proper . . . application at the conclusion of the attorney's services."  TRIAL EX. 3.  Again, there is no specific reference to § 328 or to the agreed upon one-third contingency fee, even though the Engagement Letter had been executed on October 13, 2004, prior to submission and entry of the Order Authorizing Employment.

For the above reasons, the court finds that Mr. Threadgill was not employed under § 328. The court will therefore apply the "reasonableness standard" of § 330(a) to determine the compensation to which Mr. Threadgill is entitled.

8

# III

Section 330(a) allows reasonable compensation to a professional, and a court "may award compensation that is less than the amount of compensation that is requested" if the court finds that the amount requested is not reasonable.  11 U.S.C.A. § 330(a)(2).  The Bankruptcy Code sets forth the following criteria for making the "reasonableness" determination:

(3)  In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A)  Except as provided in subparagraph (B), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

. . . .

11 U.S.C.A. § 330(a).  Additionally, the court must utilize the lodestar method, based upon the Application for Compensation submitted by Mr. Threadgill, "which is calculated by 'multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended.'"  *Boddy v. United States Bankr. Court, W. Dist. of Ky. (In re Boddy)*, 950 F.2d 334, 337 (6th Cir. 1991) (quoting *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 879 (11th Cir. 1990)).  After it establishes a lodestar figure, the court may consider additional factors such as time and labor involved, the novelty and difficulty of the question, and the skill necessary to perform the legal services properly, and it may adjust the compensation accordingly to achieve the most reasonable result.  *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

Mr. Threadgill contends that the hourly statement attached to his Application for Compensation (Hourly Statement), fully supports his requested compensation by showing that he devoted 200.25 hours to the Debtors' District Court Lawsuit.  *See* TRIAL EX. 7.  At trial, he testified that these records do not include all telephone calls he received from the Debtors, who had his cell phone number and would often call him about peripheral matters.  He also testified that he has been practicing law in Tennessee since 1967, has been involved in many lender liability cases, and is a certified civil trial specialist, and therefore, his hourly rate of $275.00, as set forth in his Application for Compensation, *see* TRIAL EX. 6, at ¶ 5, is reasonable and is consistent with an hourly rate charged by other attorneys in Knoxville with his skill and experience.  Based upon the figures contained in the Hourly Statement, multiplying the number of hours listed by his usual hourly rate of $275.00,

10

Mr. Threadgill's compensation would be $55,068.75, a sum that exceeds his requested compensation of $51,625.00 by $3,443.75.

The Debtors argue that the amount requested by Mr. Threadgill, even though "supported" by his invoice of hours expended, is unreasonable, stating that many of the services rendered were duplicative, unnecessary in part, corrections attributable to mistakes made by Mr. Threadgill, not beneficial to the Debtors' bankruptcy estate, and were not performed within a reasonable time. The Debtors also argue that Mr. Threadgill's hourly rate of $275.00 is excessive in comparison to the rates of other attorneys in Knoxville. At trial, the Debtor testified that Mr. Threadgill would not return calls or emails and that he did not, in her opinion, devote enough time to the Debtors' case. She testified that Mr. Threadgill should not have included time spent in revising and re-filing documents with the district court, and she expressed concern that Mr. Threadgill's check for the initial filing fees paid to the district court in January 2005 was returned for insufficient funds and was not made good until April 2005. The Debtors also relied on testimony by Mr. Fitzpatrick and Ms. Miller in support of their argument that many of the services as listed on the Hourly Statement did not provide any benefit to their bankruptcy estate and are therefore not compensable. Ms. Bean testified that the $10,000.00 already paid to Mr. Threadgill is more than enough to compensate him for the services he rendered on the Debtors' behalf in the District Court Lawsuit.

The proof offered by the Debtors addressed, in part, whether the services rendered by Mr. Threadgill provided a benefit to the Debtors' bankruptcy estate. Specifically, they contend that the motion for an injunction, the three motions for default judgment filed against Tim Carroll, and the motion for partial summary judgment filed in the District Court Lawsuit provided no benefit to the

11

bankruptcy estate, and the time therefor should be excluded from consideration. With respect to this contention, the Debtors relied on Mr. Fitzpatrick and Ms. Miller, who testified in detail as to the events of the District Court Lawsuit in conjunction with the bankruptcy case.

Mr. Fitzpatrick testified that he represents the Debtors in their bankruptcy case, but that he and his firm chose not to represent them in the lender liability action against Community Bank, and that he ultimately recommended Mr. Threadgill. With respect to the District Court Lawsuit, Mr. Fitzpatrick testified there were three events between the Debtors and Community Bank upon which the lawsuit was to be based: (1) an initial loan transaction wherein Community Bank was granted a lien on the Magic Spray Carwash; (2) a modification of that loan wherein the Debtors granted Community Bank a lien on a 6-acre tract adjacent to their residence, which the Debtors have maintained was modified without their consent to remove a provision that the lien would be released upon the occurrence of certain events; and (3) a second modification of the original loan wherein Community Bank was granted a lien on the Debtors' residence, and which was later released because it was determined to be a forgery. The District Court Lawsuit was to focus on alleged fraud perpetrated by Community Bank with respect to these transactions.

Mr. Fitzpatrick testified that the Complaint filed on October 14, 2004, by Mr. Threadgill did not plead with particularity allegations of fraud necessary to allow the Debtors to go forward with regard to the first modification of the original loan. He stated that in December 2005, he advised Mr. Threadgill to amend the Complaint, but that Mr. Threadgill did not file a motion to amend until January 24, 2006, in part because it took three different drafts of a letter regarding amending the Complaint before Mr. Threadgill included everything that was necessary. Mr. Fitzpatrick stated that

12

he was involved with Mr. Threadgill's representation of the Debtors only to ensure that the Complaint was amended to allege the necessary facts and to make sure that the bankruptcy issues were correctly stated.

With respect to the other documents filed in the District Court Lawsuit that were questioned by the Debtors, Mr. Fitzpatrick testified that the injunction was governed by state law, and because that law was not properly plead, the injunction was denied, and the foreclosure it was filed to stop proceeded. For this reason, there was no benefit to the bankruptcy estate from the filing of the motion seeking the injunction. As for the motions for default judgment filed against the Defendant Tim Carroll, Mr. Fitzpatrick testified that the Debtors were never successful in obtaining the default judgment, and, therefore, the estate received no benefit from those services. Concerning the motion for partial summary judgment filed to address the forgery claim, Mr. Fitzpatrick testified that it was not properly filed and was filed without an affidavit, so it was denied. Accordingly, he stated that there was no benefit to the bankruptcy estate from this filing.

Ms. Miller, who represented Community Bank in the District Court Lawsuit, provided similar testimony. First, Ms. Miller testified that the motion for partial summary judgment was denied because all of the elements of fraud were not plead in the motion itself and because there were no affidavits filed to support the elements. She also testified that the first motion for default judgment against Mr. Carroll was denied because there was no affidavit attached, the second was denied because it did not contain a certificate of service, and that the third was denied because it was not actually a motion but a proposed order that was uploaded and filed. Ms. Miller then testified that none of the five statutory grounds necessary for enjoining a foreclosure were plead and/or argued in

13

the motion for injunctive relief, and it was therefore denied.  In summary, Ms. Miller testified that none of these events provided a benefit to the Debtors' bankruptcy estate, and that, in fact, they were a detriment to the estate because they all required action by Community Bank's attorneys, which increased the amount of the claim the bank held against the Debtors.

As for the mediation, however, Mr. Fitzpatrick testified regarding the benefit to the Debtors' estate derived therefrom, stating that it was necessary in light of administrative issues surrounding the Debtors' case.  He testified that the mediation lasted for most of the day and that both he and Mr. Threadgill were present throughout on behalf of the Debtors.  Also present were a representative of Community Bank and a representative from the errors and omissions department of Community Bank's insurance carrier.  During the mediation, Mr. Fitzpatrick was actively involved, interacting primarily with the Debtors, and discussing the issues with Mr. Threadgill.  Mr. Threadgill, on the other hand, interacted primarily with the mediator and opposing counsel.  In Mr. Fitzpatrick's opinion, the mediation was successful as the mediator was able to keep the insurance carrier at the table with the result that it agreed to pay $125,000.00 into the Debtors' bankruptcy estate.  Through the mediation, the parties also worked out an agreement where Community Bank would reduce its claim against the Debtors, which approximated $200,000.00 at the time, to $50,000.00, which represented the actual principal balance owed, and it agreed to forego its attorneys' fees.  Accordingly, the Debtors' bankruptcy estate received a net benefit of $275,000.00 as a result of the mediation, which was due, in large measure, to the efforts of Mr. Threadgill.

Based upon the testimony of Mr. Threadgill, Mr. Fitzpatrick, Ms. Miller, and the Debtor, the court finds that the filing of the motion for injunctive relief, the three motions for default judgment

against Mr. Carroll, and the motion for partial summary judgment did not provide any benefit to the Debtors' bankruptcy estate, and that Mr. Threadgill is not entitled to compensation for the services attributable to the filing of these motions. The mediation, on the other hand, provided a substantial benefit to the estate, yielding a $275,000.00 gain, and all of the time associated therewith will be considered in determining Mr. Threadgill's final compensation. The record reflects that Mr. Threadgill was instrumental in bringing the District Court Lawsuit to mediation which resulted in the successful settlement.

The court's § 330(a)(3)(A) analysis also requires consideration of the reasonableness of the time spent on the services provided by Mr. Threadgill as reflected on the Hourly Statement, and any time that the court determines was not reasonably spent may be deducted from the overall hours. Because Mr. Threadgill's employment was not approved prior to October 13, 2004, any time spent prior to that date is not compensable. Accordingly, his requested compensation for services provided on October 11, 2004, for 1.5 hours and October 12, 2004, for 2.4 hours cannot be considered.

The Debtors contend that many of the services itemized on the Hourly Statement were not reasonable because they were overstated, duplicative, unnecessary, and corrections of earlier mistakes made by Mr. Threadgill and his staff in connection with filings in the Debtors' district court case. With respect to overstated hours, the Debtor called into question the following entries, expressing her concern over the amount of time allotted for performing these functions:

> 1) An entry dated October 14, 2004, in which Mr. Threadgill billed 10.5 hours for preparing the initial draft of the District Court complaint, reviewing and conferring with the Debtors, made necessary revisions and filed the complaint with the District Court, conducted a telephone conference with opposing counsel regarding waiver of

15

service, obtained additional documents from the Debtors and continued reviewing documents and organizing the file;

2)  Entries dated May 23, 2006, May 30, 2006, May 31, 2006, June 1, 2006, and June 2, 2006, in which Mr. Threadgill billed a total of 4.0 hours for pursuing the possibility of mediation and his efforts to schedule mediation; and

3)  An entry dated July 1, 2005, in which Mr. Threadgill billed 2.4 hours for his continued review of documents received from Steven Wise and a telephone conference with the Debtors.

*See generally* Trial Ex. 7.

"Except in unusual circumstances, it is not realistic for an attorney to bill in excess of six to seven hours per day." *New Boston Coke Corp.*, 299 B.R. at 448 (citing *In re Associated Grocers of Colo.*, 137 B.R. 413, 426 (Bankr. D. Colo. 1990)).  Accordingly, the court must also consider Mr. Threadgill's entry for October 13, 2004, in which he billed 9.6 hours for beginning to review the file documents for analysis of issues in contemplation of preparing the Complaint and held various telephone conferences with the Debtors and Mr. Fitzpatrick, and the June 28, 2006 entry in which Mr. Threadgill billed 9.5 hours for attending the mediation.

Moreover, all of Mr. Threadgill's entries are "lumped" together into single entries for each day, rather than divided by each individual task, and most seem to charge large amounts of time for non-descriptive services such as reviewing, preparing, conferring, or receiving, without more explanation.  "In order for a task to be compensable, that task must be set forth in detail in the Fee Application.  Each task must be listed separately and not combined, or 'lumped' with other tasks so that the Court can discern whether a reasonable amount of time was spent performing that task." *New Boston Coke Corp.*, 299 B.R. at 446-47; *see also Cleveland Area Bd. of Realtors v. City of*

*Euclid*, 965 F. Supp. 1017, 1021 (N.D. Ohio 1997) (reducing requested fees by 10% for insufficient documentation when all time entries were "lumped" wherein the court could not fully evaluate the adequacy of the fees requested).

The Debtors also dispute Mr. Threadgill's billing them for services necessary to correct mistakes that he made in filing documents with the district court.  Based upon a review of Trial Exhibit 7 in conjunction with Trial Exhibit 9, the court finds that Mr. Threadgill provided the following services that can only be attributed to correcting deficiencies with prior district court filings:  on July 11, 2005, he expended .5 hours for amending and refiling a motion for default judgment to cure a notice of deficiency issued by the district court on June 24, 2005.  There were, however, other notices of deficiency that were apparently cured by Mr. Threadgill that do not have corresponding time entries on the Hourly Statement.

The issue of corresponding entries between Trial Exhibits 7 and 9 raises another point that the court must address.  From its review of these documents in tandem, the court finds that there are inconsistencies with respect to events that Mr. Threadgill has billed and failed to bill.  For example, on March 30, 2005, Mr. Threadgill has an entry for 1.5 hours for attending a hearing in the district court.  *See* TRIAL EX. 7.  The District Court Docket Sheet evidences that there was a hearing on March 30, 2005, on the Debtors' motion for an injunction, but the hearing was continued to and concluded on March 31, 2005.  *See* TRIAL EX. 9.  Trial Exhibit 7 does not have a corresponding entry for March 31, 2005.

17

Similarly, the Docket Sheet evidences that on June 13, 2005, the first motion for default judgment against Tim Carroll was filed by the Debtors, but there is no corresponding entry on the Hourly Statement.  *See* Trial Ex. 7; Trial Ex. 9.  Likewise, the Docket Sheet indicates that a second motion for default judgment was filed on June 22, 2005, while the Hourly Statement indicates that it was filed on June 25, 2005.  *Compare* Trial Ex. 7 *with* Trial Ex. 9.

Finally, the Debtors contend that Mr. Threadgill's hourly rate of $275.00 is excessive.  In support of his hourly rate, Mr. Threadgill testified that he has been practicing in Tennessee for thirty-nine years, since 1967, in solo practice since 1991, and that he is a certified civil trial specialist.  He testified that he has been charging an hourly rate of $275.00 for approximately fifteen years, and that he even raised his rate to $350.00 for a period of time, but reduced it back to $275.00 in 2003.  Mr. Threadgill testified that this rate is consistent with what other attorneys with his level of experience charge, including by name, Harold Stone, Lou Wolfe, and Charles Lewis, and other senior partners at many of the larger firms in Knoxville.

Mr. Fitzpatrick, who has practiced for twenty-eight years in Tennessee and has more than twenty years experience specializing in debtor/creditor relationships, testified that in 2004, he charged $250.00 per hour.  He stated that $250.00 per hour is the rate most utilized by attorneys with his level of experience, but he knows of attorneys who do charge $275.00, including John Walker. Ms. Miller, who has practiced law for eighteen years, specializing in commercial loan workouts, bankruptcy, real estate transactions, and lender liability law, testified that in 2004, she was one of the attorneys representing Community Bank in the District Court Lawsuit from the law firm of Baker, Donelson, Bearman & Caldwell, and that it charged Community Bank a blended reduced rate

18

of $220.00 per hour, irrespective of the attorney providing the services.  She acknowledged, however, that there were partners at that firm who charged $275.00 per hour or more.

Based upon Mr. Threadgill's experience and the fact that other attorneys with that same level of experience charge the same or a higher hourly rate, the court finds Mr. Threadgill's hourly rate of $275.00 to be fair and reasonable.

The Hourly Statement submitted by Mr. Threadgill reflects a total of 200.25 hours, which, as previously noted, equates to total compensation of $55,068.75.  Because the compensation requested by Mr. Threadgill, as stated in his Application for Compensation and as confirmed at trial, is $51,625.00, the court will begin with the lower figure.

Based upon the earlier analysis concerning reasonableness, the court will deduct the following hours from the total amount to be considered for Mr. Threadgill's final compensation:

time expended prior to approval of employment on October 13, 2004

| | |
|---|---|
| October 11, 2004 | 1.5 hours |
| October 12, 2004 | 2.4 hours |

time concerning the motion for injunction

| | |
|---|---|
| March 16, 2005 | 4.8 hours |
| March 17, 2005[7] | 2.25 hours |
| March 18, 2005 | 3.75 hours |
| March 22, 2005 | .25 hours |
| March 28, 2005 | 1.7 hours |
| March 29, 2005 | 2.0 hours |
| March 30, 2005 | 1.5 hours |

time concerning the motion for partial summary judgment

---

[7] The Hourly Statement incorrectly states March 17, 2006, but this is obviously a typographical error.

19

| | |
|---|---|
| November 10, 2004 | 5.5 hours |
| January 11, 2005 | 3.9 hours |
| April 25, 2005 | 4.1 hours |
| April 28, 2005 | 2.3 hours |
| April 29, 2005 | 1.9 hours |
| May 3, 2005 | 1.5 hours |
| May 25, 2005 | 1.6 hours |
| July 19, 2005 | 1.0 hours |

time concerning the motions for default judgment against Tim Carroll

| | |
|---|---|
| June 10, 2005 | 1.5 hours |
| June 25, 2005 | 1.0 hours |
| July 11, 2005 | .5 hours |
| TOTAL | 44.95 hours |

*See generally* TRIAL EX. 7.

Deducting these 44.95 hours multiplied by $275.00 per hour equals an initial reduction of $12,361.25 from the requested $51,625.00, which brings Mr. Threadgill's overall compensation to $39,263.75.

However, because Mr. Threadgill's time entries are "lumped" together, the court cannot fully evaluate the reasonableness of the time expended, including whether the tasks performed were necessary, were clerical in nature, and/or were duplicative.  Lumping all events together has resulted in some entries for more than six hours per day, which gives rise to a question of reasonableness. Accordingly, the court will further reduce Mr. Threadgill's compensation by 10%, or $3,926.38, resulting in total compensation of $35,337.37 to be awarded Mr. Threadgill as a result of his

employment by the Debtors.[8]  Having received interim compensation of $10,000.00, he is therefore

entitled to an additional $25,337.37.

An order consistent with this Memorandum will be entered.

FILED:  January 8, 2007

                                        BY THE COURT

                                        /s/  RICHARD STAIR, JR.

                                        RICHARD STAIR, JR.
                                        UNITED STATES BANKRUPTCY JUDGE

---

[8] At trial, Mr. Threadgill asked the court to grant him compensation for the time that he has spent defending
his fee application; however, "[t]he general rule is that attorney time for defending fee applications is not compensable."
*Boston New Coke Corp.*, 299 B.R. at 442.  Accordingly, the court declines to consider any time incurred by Mr.
Threadgill in the defense of his Application for Compensation.